**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Mark A. Camper, | ) | No. CV-07-2251-PHX-GMS |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| John E. Potter, Postmaster General, | ) | |
| Defendant. | ) | |

Pending before the Court is the Motion for Summary Judgment (Dkt. # 90) filed by Defendant John Potter, the Postmaster General of the United States. For the following reasons, the Court denies the Motion.[1]

**BACKGROUND**

Throughout the time period relevant to the instant action, Plaintiff Mark A. Camper ("Camper") was employed as a Supervisor at the West Valley Postal Facility for the United States Postal Service ("USPS"). Camper worked the Tour 2 shift (i.e., the day shift) with Sundays and Mondays as his days off.

---

[1] The parties' requests for oral argument are denied as the Court has determined that oral argument will not aid in its decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

In late 2005 and early 2006, USPS began a nationwide reorganization of its facilities across the United States. As part of this reorganization, the West Valley Facility created three new Tour 2 supervisor positions at pay grade "17." Camper applied for one of the newly created Level-17 positions, but was denied consideration due to a mistake in his application. (*See* Dkt. ## 91 at ¶ 12.) When Camper learned that he was not being considered for the promotion, he filed an informal Equal Employment Opportunity ("EEO") complaint against USPS, claiming discrimination on the basis of age, race, and religion. (Dkt. # 97 at 1.) Specifically, Camper alleged that USPS discriminated against him by incorrectly processing his application. (*Id.*)

After Camper filed his EEO complaint, USPS permitted him to reapply for the Level-17 position. Nevertheless, on June 12, 2006, USPS informed Camper that he was not among one of the three individuals selected for promotion at that time. Shortly thereafter, Dave Carey and Dave Dilettoso, two upper-level managers at the West Valley Facility, decided to adjust employee work schedules to accommodate personnel changes that resulted from USPS's nationwide reorganization. Specifically, Carey and Dilettoso determined that the reorganization would require at least three supervisors to be on duty during each Tour 2 shift, with the exception of Mondays, which only required two supervisors because it was the slowest day of the week. (Dkt. # 91 at ¶¶ 23–24.) New schedules were then implemented on July 11, 2006. Based on the record, it appears that the West Valley Facility had six supervisors at that time: Ed Baker, Tim Felton, Richard Teets, Gary Platsky, Kristi Becker, and Camper. (*See* Dkt # 96, Ex. 1 at 2061.) Of these, Baker, Felton, and Platsky, who had been promoted to Level-17 supervisors, were assigned their work schedules based on seniority. The remaining supervisors were then allegedly assigned schedules so that each work day had no less than three supervisors. (*See id.*) And while USPS asserts that Camper's days off were changed from Sunday/Monday to Monday/Tuesday to ensure that each work day had three supervisors, Camper presents evidence that the change was unnecessary. According to Camper, USPS required him to work Sundays, even though there were already four other supervisors assigned to work that day. (*See* Dkt. # 96, Ex. 1 at 2061.) He also

presents evidence that there would have been at least three supervisors scheduled each work day, including Mondays which only required two supervisors, even if Camper had been permitted to retain his old schedule.

Camper was upset with his new work schedule because he operated an independent real estate business on Sundays. He therefore filed the instant action, alleging that USPS discriminated and retaliated against him for bringing his EEO complaint. Camper raised three claims in his Complaint: (1) employment discrimination pursuant to Title VII of the Civil Rights Act of 1961, 42 U.S.C. § 2000e-16 ("Title VII"); (2) retaliation under Title VII;[2] and (3) breach of a settlement agreement. (Dkt. # 87.) On August 26, 2009, the Court dismissed Camper's discrimination and breach of settlement claims. (Dkt. # 84.). USPS now moves for summary judgment on Camper's retaliation claim. (Dkt. # 90.)

## LEGAL STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir.1994). The dispute must also be genuine; that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## DISCUSSION

To establish a prima facie case of retaliation under Title VII, a plaintiff must show (1) that he or she engaged in protected activity, (2) a materially adverse action, and (3) a causal connection between the two. *Surrell v. Cal. Water Serv.*, 518 F.3d 1097, 1108 (9th Cir.

---

[2] Camper's claim is limited to the allegation that he was retaliated against when USPS changed his work schedule. He does not contend that he was retaliated against when he was passed up for the Level-17 promotion. (*See generally* Dkt. ## 87; 97.)

- 3 -

2008). At the prima facie stage, the causal link is construed broadly; a plaintiff must merely "prove that the protected activity and the negative employment action are not completely unrelated." *See Poland v. Chertoff*, 494 F.3d 1174, 1181 n. 2 (9th Cir. 2007). Once the prima facie case is shown, the employer may articulate some legitimate, non-retaliatory reason for the challenged action. *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464–65 (citations omitted). Should the employer carry this burden, the plaintiff must then show that the stated reason was not the employer's true reason, but was a mere pretext for retaliation. *Id.* (citations omitted).

### I. Prima Facie Case

Camper has set forth a prima facie case of retaliation. First, Camper engaged in a protected activity when he filed his EEO complaint. It further appears that he suffered an adverse employment action when USPS decided to change his days off from Sunday/Monday to Monday/Tuesday. *See Ray v. Henderson*, 217 F.3d 1234, 1243, (9th Cir. 2000) (holding that a "changes in work schedules" constitute adverse employment actions); *see also Moore v. King County*, 2005 WL 289065, at *5 (W.D. Wash. Oct. 31, 2005) (noting "as a matter of law" that assigning an employee to a "new shift" is an adverse employment action in the context of a Title VII retaliation claim). Camper has also presented sufficient evidence of a causal link between the EEO complaint and USPS's decision to switch his days off. Camper filed his EEO complaint on April 18, 2006. Less than three months later, USPS implemented the schedule change. The proximity of these events is sufficient, given the circumstances of this case, for a reasonable factfinder to determine that the EEO complaint caused the change to Camper's schedule. *See Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) ("Depending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation."); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (holding that causation may be inferred from timing alone where an adverse employment action follows on the heels of the protected activity); *Hernandez v. Arizona*, ___ F. Supp.2d ___, 2010 WL 1193727, at *4 (D. Ariz. 2010) (inferring causation under Title VII based on timing alone). And while USPS brings forth evidence that the

- 4 -

1  decision to change Camper's scheduled was caused by USPS's nationwide reorganization,
2  the parties' dispute over causation is a factual question for the jury to answer.

### II. Legitimate Non-Retaliatory Reason

Because Camper has set forth a prima facie case, the burden of production now shifts to USPS to articulate a legitimate, non-retaliatory reason for adjusting Camper's work schedule. *See Steiner*, 25 F.3d at 1464–65. To meet this burden, "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by [retaliatory] animus." *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257 (1981); *see also Steiner*, 25 F.3d at 1464–65 (applying this standard in the context of a retaliation claim).

USPS has arguably offered evidence showing that the decision to switch Camper's days off was motivated by a legitimate non-retaliatory reason. The nationwide reorganization for USPS required the creation of new management positions at the West Valley Facility. As a result of the reorganization, the three newly-created Level-17 supervisors had preference over Camper in setting their schedules. *See Ballard v. Portland General Electric Co.*, 293 F. App'x 448, 450 (9th Cir. 2008) (finding that an employer's decision to grant priority in scheduling based on seniority constitutes a legitimate non-retaliatory reason). According to USPS, it selected Camper to work on Sunday because it needed at least three supervisors to work on that day. (Dkt. # 91 at ¶¶ 23–24.) Relying on this evidence, a reasonable jury could rationally conclude that USPS had a legitimate non-retaliatory reason for changing Camper's work schedule. *See Burdine*, 450 U.S. at 257. This shifts the burden of production back to Camper to show pretext.

### III. Pretext

Camper carries his burden of showing that USPS's explanation for shifting Camper's days off may be pretext for retaliation. To demonstrate that the employer's reason may be pretextual, a plaintiff may show either that a retaliatory reason "more likely motivated the employer" or that the employer's proffered explanation is "unworthy of credence." *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123–24 (9th Cir. 2000) (citing *Burdine*, 450 U.S. at

256); *see also Gray v. Masterfoods USA*, 304 F. App'x. 611, 612 (9th Cir. 2008) (applying the same test for pretext in a retaliation claim as that applied in discrimination claims). In this Circuit, pretext can be proven with either direct evidence or circumstantial evidence, but where the plaintiff relies on circumstantial evidence to prove pretext, that evidence must be "specific" and "substantial" to survive summary judgment. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (2003) (citing *Manatt v. Bank of Am.*, 339 F.3d 792, 801 (9th Cir. 2003)). Evidence of pretext is both specific and substantial when it is "sufficient to raise a genuine issue of material fact under Rule 56(c)." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029 (9th Cir. 2006).

Though Camper does not present direct evidence of a retaliatory motive, he does bring forth sufficient evidence to allow a reasonable jury to find that USPS's reason for changing Camper's days off is "unworthy of credence." *See Chuang*, 225 F.3d at 1123–24. USPS explains that it required Camper to work Sundays because the West Valley Facility needed at least three supervisors to work Sundays. Nevertheless, Camper presents evidence that four other supervisors regularly worked that day. (*See* Dkt # 96, Ex. 1 at 2061.) Before USPS made the schedule change in July 2006, it appears that the following four supervisors worked on Sundays: Baker, Teets, Platsky, and Becker. (*Id.* at 2060.) After the schedule change, five supervisors were required to work on Sundays: Teets, Platsky, Becker, Felton, and Camper. (*Id.* at 2061.) If Camper had been permitted to continue having Sundays and Mondays off, USPS still would have had at least three supervisors on duty every day of the week, including Sunday and Mondays. (*See id.*) Given this evidence, it seems illogical that USPS needed Camper to work Sundays in order to have at least three supervisors on duty.

It is further unclear why the nationwide reorganization required any schedule change at all since it appears that USPS had at least three supervisors working every day of the week, even prior to the reorganization. (*Id.* at 2060.) To the extent it was necessary to adjust Baker's, Platsky's, and Teets's schedules to ensure that the newly promoted Level-17 Supervisors worked specific shifts, there still would have been at least three supervisors available on each day of the week, even if the non-promoted supervisors, such as Camper,

- 6 -

had been permitted to retain their old work schedules. (*See id.*) And, while USPS contends that it had a legitimate business reason for setting schedules the way it did, that reason appears to be contradicted by the record. Where USPS scheduled five supervisors on Sundays and four on Mondays, the lightest days of the week, it scheduled only three supervisors on Tuesdays, the busiest of the week. (Dkt. # 96 at 172.)

In its reply, USPS appears to assert that Camper's pretext argument fails because the requisite number of supervisors was only available on Sundays when 204(b)s, or temporary supervisors, are included in the pool of available supervisors. (Dkt. # 99 at 8–9.) According to USPS, these 204(b)s cannot be considered part of the pool because they can only fill-in for actual supervisors on a short-term basis. (*Id.*) USPS, however, does not present any evidence, let alone a citation to the record, to refute Camper's argument that the supervisory pool included at least six actual supervisors. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("'[J]udges are not like pigs, hunting for truffles buried in briefs.'") (citation omitted). USPS further fails to identify which of the group, in any, are 204(b)s. *See id.* Accordingly, there are issues of fact with respect to whether the utilization of 204(b) supervisors is necessary to Camper's argument that a sufficient number of supervisors worked Sundays to allow him to have that day off. Further, even if the 204(b)s are essential to Camper's arguments, USPS has not presented any legal or factual authority to support its assertion that 204(b) supervisors cannot be considered as available supervisors. (*See* Dkt. # 96 Ex. 4 at 62.) USPS also raises this unsupported argument for the first time in its Reply, depriving Camper of the opportunity to respond to it.

The Court also rejects USPS's argument that Camper fails to bring forth more than a "mere refutation" of USPS's allegedly non-retaliatory reason for switching Camper's schedule. *See Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2002) (noting that pretext "must consist of more than a mere refutation of the employer's legitimate reason and a mere assertion that the [retaliatory] reason" was the cause of the adverse employment action) (internal quotation and brackets omitted). Here, Camper presents evidence suggesting that the schedule change was entirely unnecessary to achieve USPS's

proffered purpose—to have three supervisors working every day of the week. This is sufficient for a reasonable factfinder to determine that USPS's reason for changing Camper's schedule is implausible, weak, or otherwise unworthy of credence. *See Henandez*, 2010 WL 1193727, at *9 (noting that a plaintiff may satisfy the unworthy of credence prong by pointing to "specific inconsistencies, contradictions, implausibilities, or weaknesses in the employer's explanation") (citing *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005) and *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp.2d 1110, 1130 (E.D. Cal. 2006)). This evidence also is sufficient for the fact-finder to conclude that USPS did not "honestly believe[] its reason for its actions." *See Villiarimo*, 281 F.3d at 1063 (noting that an employer's reason for making an adverse employment decision is not pretext if the employer had an honest belief that the decision was justified). And while Camper "must show *both* that [USPS's] reason was false, and that [retaliation] was the real reason" for the schedule change, "[t]he factfinder's disbelief of the reasons put forward by [USPS] . . . may, together with the elements of the prima facie case, suffice to show intentional [retaliation]." *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 512 n.4 (1993).

**CONCLUSION**

Having concluded that there are genuine issues of material fact with respect to Camper's Title VII claim,

**IT IS THEREFORE ORDERED** that USPS's Motion for Summary Judgment (Dkt. # 90) is **DENIED**.

DATED this 29th day of April, 2010.

_____
G. Murray Snow
United States District Judge